# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 6, 2017

Lyle W. Cayce
Clerk

————

No. 16-60324

————

OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INCORPORATED; STEVE DAVENPORT; TILDEN CURL, JR.; COLIN GENGE,

      Petitioners

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION; FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION; UNITED STATES OF AMERICA,

      Respondents

————

Petition for Review of an Order of the Department of Transportation,
Federal Motor Carrier Safety Administration

————

Before JONES, CLEMENT, and ELROD, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This is an appeal of the Federal Motor Carrier Safety Administration's ("FMCSA") grant of permanent operating authority to two Mexico-domiciled motor carriers. The Owner-Operator Independent Drivers Association and several independent truckers (collectively "the Association") argue that the FMCSA lacked authority to grant permanent operating authority to these carriers. Because we conclude that the Association failed to file a timely appeal as required by statute, we DISMISS for lack of jurisdiction.

No. 16-60324

**I.**

In 2011, the United States initiated a Pilot Program to test the safety of Mexican motor carriers conducting "cross-border, long-haul" operations throughout the United States. Designed and administered by the FMCSA, the Pilot Program was intended to "test the effectiveness of its regulations governing the registration and monitoring of Mexico-domiciled motor carriers." The Pilot Program involved extensive vetting and monitoring processes, with additional oversight by the Department of Transportation Inspector General and a subcommittee, the Motor Carrier Safety Advisory Committee (MCSAC). In ordering the Pilot Program, Congress "directed that DOT not open the borders to long-haul trucking until the granting of authority was first tested as part of a pilot program[.]"

In January 2015, FMCSA issued its final report to Congress, "conclud[ing] that the Pilot Program successfully demonstrated that Mexican motor carriers can and do operate throughout the United States at a safety level equivalent to U.S. and Canada-domiciled motor carriers and consistent with the high safety standards that FMCSA imposed on all motor carriers authorized to operate in the United States." As a result, FMCSA began granting permanent operating authority to Mexico-domiciled motor carriers engaged in long-haul trucking. In addition, FMCSA has accepted Mexican commercial driving licenses ("CDLs") as equivalent to American state-issued CDLs.

In November 2015, the Association protested FMCSA's grant of permanent operating authority to two Mexico-domiciled motor carriers. The Association broadly contended that FMCSA lacked authority to (1) grant operating authority to Mexico-domiciled motor carriers, and (2) accept Mexican

No. 16-60324

CDLs as equivalent to state-issued CDLs. On the first claim, the Association alleged that FMCSA lacked such authority because it did not adequately conduct the Pilot Program. Alleged deficiencies included an insufficient number of participants, an insufficient number of inspections, and unreliable comparative data, among others. On the second claim, the Association alleged that 49 U.S.C. §§ 31302 and 31308 require Mexican drivers to obtain state-issued CDLs.

On December 23, 2015, FMCSA "rejected and dismissed" both protests in two separate orders. FMCSA explained that, under its implementing regulations, an application for operating authority "can be opposed only on the grounds that the applicant is not fit [e.g., is not in compliance with applicable financial responsibility and safety fitness requirements]." Here, FMCSA wrote, the Association "does not allege, and provides no evidence to show, that Applicant is not fit to provide the relevant transportation or that Applicant is not able to comply with applicable requirements."

On January 8, 2016, the Association filed a "Motion for Reconsideration." On March 23, 2016, FMCSA sent the Association a series of letters, stating that it "will not consider the motion for reconsideration" because its regulations "do not provide for motions for reconsideration of an agency decision denying a protest" and the December 23 decisions "[were] final agency action[s]." The Association filed its petition for review with this court on May 20, 2016.

## II.

Prior to oral argument, we requested supplemental briefing to clarify whether we have appellate jurisdiction. "We review questions of subject matter jurisdiction *de novo*, and may consider such questions *sua sponte* because 'subject matter delineations must be policed by the courts on their own

3

initiative.'" *Ezike v. Holder*, 383 F. App'x 470, 472 (5th Cir. 2010) (quoting *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007)).

### III.

We have jurisdiction to hear appeals from "final orders" of the "Secretary of Transportation." 28 U.S.C. § 2342(3). "Any party aggrieved by the final order may, *within 60 days after its entry*, file a petition to review the order in the court of appeals." *Id.* § 2344 (emphasis added). "Th[is] 60 day period for seeking judicial review . . . is jurisdictional in nature, and may not be enlarged or altered by the courts." *Council Tree Investors, Inc. v. F.C.C.*, 739 F.3d 544, 551 (D.C. Cir. 2014) (quoting *Nat. Res. Def. Council v. Nuclear Regulatory Comm'n*, 666 F.2d 595, 602 (D.C. Cir. 1981)). As such, the jurisdictional question boils down to which agency action—the December 23, 2015 orders rejecting and dismissing the Association's protest or the March 23, 2016 letters refusing to "consider the motion for reconsideration submitted on" the Association's behalf—constituted the final order. We conclude that the December 23 decisions were the final orders.

As a threshold matter, the March 23 letters did not actually "order" anything, but rather refused to even "consider the motion for reconsideration submitted on [the Association's] behalf." It specifically stated that "[t]he Federal Regulations in 49 C.F.R. Part 365 that govern the filing of protests to oppose motor carrier requests for operating authority registration, including requests from Mexico-domiciled motor carriers, do not provide for motions for reconsideration of an agency decision denying a protest," and designated the December 23 decisions as "final." Even if these letters could be construed as a "final agency action," the statute requires the petition be filed within sixty days of the "final *order*." *Compare* 28 U.S.C. § 2344 *with* 42 U.S.C. § 7607(b)(1)

(providing for judicial review of any "final action" taken by the Administrator of the EPA).

Furthermore, the FMCSA's regulations "do not expressly provide for motions for reconsideration of denials of protest, neither do they expressly foreclose such motions." As such, absent some type of tolling, the Association did not file its petition for review within 60 days of the decision—and thus, we lack jurisdiction to consider the petition.

Both parties, however, argue that the Association's "motion for reconsideration should be treated as tolling the time for seeking judicial review." We disagree. While it is true that the "timely filing of a motion to reconsider renders the underlying order nonfinal," *Stone v. INS*, 514 U.S. 386, 392 (1995), a motion for reconsideration can only be "timely" when it "has been filed within a discretionary review period *specifically provided by the agency*." *I.C.C. v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 279 (1987) (emphasis added). Here, the "tolling rule is not applicable . . . because the [FMCSA] has not established a rehearing or reconsideration procedure[.] Thus, there is no 'discretionary review period specifically provided by the agency' of which the [entity] could avail itself." *City of Colo. Springs v. Solis*, 589 F.3d 1121, 1131 (10th Cir. 2009).[1] Otherwise, parties could evade the time limit for judicial review by requesting reconsideration of long-resolved matters.

---

[1] We note that some of our sister courts have held that they lack jurisdiction to review a petition for review filed during the pendency of a motion for agency reconsideration because such petitions are "incurably premature and in effect a nullity." *See, e.g., Gorman v. NTSB*, 558 F.3d 580, 586 (D.C. Cir. 2009). The facts here do not require that we reach that issue. *Cf. Craker v. Drug Enforcement Admin.*, 714 F.3d 17 (1st Cir. 2013) ("[W]e are not persuaded that we should impose a bright line test requiring dismissal or amendment of a petition filed during the pendency of a motion for reconsideration, at least where the reconsideration process is ad hoc, as here.").

No. 16-60324

Accordingly, the Association's May 20, 2016 appeal—filed 148 days after the FMCSA issued its final orders—was untimely and we are bereft of jurisdiction.

## IV.

In conclusion, the two December 23, 2015 decisions constituted the "final order[s]" of the FMCSA, a fact unaffected by the Association's motion for reconsideration. Because the Association's subsequent petition for appellate review was untimely, we DISMISS for lack of jurisdiction.