# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40454
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 1, 2017

Lyle W. Cayce
Clerk

JUAN GERARDO SANDOVAL-LOPEZ,

Petitioner - Appellant

v.

REX W. TILLERSON, SECRETARY, U.S. DEPARTMENT OF STATE;
UNITED STATES OF AMERICA,

Respondents - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:16-CV-273

Before JOLLY, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Juan Gerardo Sandoval-Lopez ("Lopez")[1] appeals the dismissal of his claim under 8 U.S.C. § 1503(a) relating to the denial of a United States passport on the grounds that the court lacked subject matter jurisdiction to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Carlos Sandoval, the father of Lopez, was also a named appellant when this appeal was filed. He passed away on June 28, 2017, and therefore is no longer an appellant. *See Walker v. Warden, U.S. Penitentiary*, 593 F.2d 21 (5th Cir. 1979) (per curiam).

No. 17-40454

hear the claim. Further, Lopez appeals the dismissal of his claims for relief under habeas corpus for a violation of federal due process and under the Administrative Procedure Act ("APA") on the grounds that the court lacked subject matter jurisdiction. For the reasons explained below, we AFFIRM.

## I. Background

Lopez, who was born in Mexico, claims derivative United States citizenship through the United States citizenship of his father, Carlos Sandoval ("Sandoval"). *See* 8 U.S.C. § 1401(g). Sandoval's United States citizenship was in question at the time of his death and merits a brief discussion in connection with the removal proceedings previously initiated against him and Lopez.

Sandoval was born in May 1940, with one birth certificate indicating he was born in Linares, Nuevo León, Mexico, and another, delayed certificate of birth indicating he was born in Rio Hondo, Texas. Sandoval was living in Mexico when he married and had children, and around 1980, he came to the United States for work. Upon receipt of the delayed certificate of birth indicating Sandoval's birth in Texas, he received a social security card and United States passport, among other documents. Around 1991, Sandoval retained counsel to apply for immigrant visas and adjustment of status for his family, including Lopez, who had joined him in the United States. After an investigation of Sandoval's citizenship claims, removal proceedings were initiated, and on May 26, 1995, an immigration judge ("IJ") in Miami issued an Order to Show Cause and Notice of Hearing to Sandoval. Ultimately , an order of removal was issued in absentia against *both Sandoval and Lopez*. There is no indication, nor does Lopez argue, that any appeal was made of these orders.

In 1998, Lopez presented a false United States birth certificate at the United States border and the INS ordered him to be removed under an

2

No. 17-40454

Expedited Order of Removal.  There is no indication that Lopez appealed this order, and he subsequently returned to Mexico of his own volition.  On March 14, 2016, Lopez applied for a United States passport, claiming derivative citizenship based upon his father's United States citizenship.  On August 1, 2016, the passport application was denied because there was not sufficient evidence to prove that Sandoval was a United States citizen.

On October 21, 2016, Lopez filed a lawsuit in federal district court to, inter alia, (1) request habeas corpus review under 28 U.S.C. § 2241 of the decision to deny his passport application, claiming the "arbitrary denial of [Lopez]'s application for a passport based upon acquired citizenship" was a violation of due process, (2) institute APA review of Lopez and Sandoval's citizenship and declare both United States citizens, and (3) have the court declare Lopez a United States citizen under the Declaratory Judgment Act, claiming that denial of a passport deprived Lopez of a right or privilege claimed as a United States citizen under 8 U.S.C. § 1503(a).  The district court determined that it lacked subject matter jurisdiction over those claims on the basis that all appeals of removal orders should be directed through 8 U.S.C. § 1252, which lays out the review procedure for removal orders, and dismissed the case.  Lopez now appeals the district court's dismissal.

## II.  Standard of Review

"We review questions of subject matter jurisdiction *de novo*." *Owner-Operator Indep. Drivers Ass'n, Inc. v. United States Dep't of Transp.*, 858 F.3d 980, 982 (5th Cir. 2017) (quoting *Ezike v. Holder*, 383 F. App'x. 470, 472 (5th Cir. 2010) (per curiam)).

## III.  Discussion

Congress amended the jurisdictional provisions of the Immigration and Nationality Act by passing the REAL ID Act of 2005, Pub. L. No. 19-13, 119 Stat. 231.  The REAL ID Act amended 8 U.S.C. § 1252(a)(5) to provide that

No. 17-40454

"[n]otwithstanding any other provision of law (statutory or nonstatutory), including [28 U.S.C. § 2241] . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." The notes to § 1252 explain that "[t]he amendments made by subsection (a) . . . shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued *before*, on, or after *the date of the enactment of this division*." REAL ID Act of 2005, Pub. L. No. 19-13, 119 Stat. 231, 311 § 106(b) (emphasis added).

Section 1503(a) provides:

> If any person who is *within the United States* claims a right or privilege as a national of the United States and is denied such right or privilege . . . upon the ground that he is not a national of the United States, such person may institute an action . . . for a judgment declaring him to be a national of the United States.

8 U.S.C. § 1503(a) (emphasis added). Thus, a threshold question in this case is whether Lopez properly filed his § 1503(a) lawsuit. Section 1503(a) requires that a person be "within the United States" when filing a claim. Lopez filed his initial action while standing at the port of entry to the United States in Brownsville, Texas. At least one district court has determined that being at the port of entry is not considered "within the United States." *Villafranca v. Tillerson*, No. 1:16-CV-00077, 2017 WL 2735589, at *4 (S.D. Tex. June 26, 2017), *appeal dism'd*, No. 17-40712 (5th Cir. Sept. 12, 2017). Section 1503(b) provides rights analogous to § 1503(a) to individuals "not within the United States." 8 U.S.C. § 1503(b). Under that section, individuals must apply for a certificate of identity "for the purpose of traveling to a port of entry in the United States and applying for admission." 8 U.S.C. § 1503(b). Thus, if standing in a port of entry were enough to satisfy being "within the United States" for § 1503(a), it would be superfluous to include a requirement to get a certificate of identity to go to the port of entry under § 1503(b). *See Villafranca,*

4

2017 WL 2735589, at \*4.   The logic behind this determination is sound. Although the district court did not address this argument, "[i]t is well-settled . . . that we will not reverse a judgment of the district court if it can be affirmed on any ground, regardless of whether the district court articulated the ground." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 422 (5th Cir. 2017) (quoting *United States v. Real Property*, 123 F.3d 312, 313 (5th Cir. 1997)). Therefore, we conclude that the district court properly dismissed this action under § 1503(a).[2]

Moving to Lopez's claims under the APA and habeas, we find that we lack jurisdiction to consider those claims.  As an initial point, the REAL ID Act applies retroactively, meaning that its provisions are applicable to Lopez's citizenship claim.  *Rosales v. Bureau of Immigration & Customs Enf't*, 426 F.3d 733, 736 (5th Cir. 2005) (per curiam) (quoting REAL ID Act of 2005, Pub. L. No. 19-13, 119 Stat. 231, 311 § 106(b)).  By amending 8 U.S.C. § 1252(b)(9), the REAL ID Act made clear that "no court shall have jurisdiction[] by habeas corpus under [§] 2241 . . . or by any other provision of law (statutory or nonstatutory)" to review claims "arising from any action or proceeding brought to remove an [individual] from the United States," and that all review of removal orders brought "under [§ 1252] shall be available only in judicial review of a final order under [§ 1252]."   8 U.S.C. § 1259(b)(9).   This directs review of an order of removal through the procedure outlined in § 1252.[3]

---

[2] We are aware that Lopez attempted to rectify this issue by filing a new action while in the United States to be with Sandoval upon his death in *Sandoval-Lopez v. Tillerson*, No. 1:17-cv-137 (S.D. Tex. July 4, 2017), which remains pending in the district court. We express no opinion on the ultimate determination of that case.

[3] Lopez argues that under *Omolo v. Gonzales*, 452 F.3d 404 (5th Cir. 2006), § 1252(b)(9) cannot yet be applied because he claims to be a "citizen" rather than an "alien," and therefore, the court must first determine his citizenship before deciding if he must exhaust the § 1252(b) procedural requirements. *Id.* at 407. We need not reach that issue here. The plaintiff in *Omolo* filed a timely petition for review, and therefore, the court analyzed § 1252(d), which dictates when a court can review a final order of removal. *Id.*

No. 17-40454

Further, to initiate judicial review, the APA requires a "final agency action for which there is no other adequate remedy in a court," and Lopez potentially has an adequate remedy in court available through § 1252. *See Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (quoting 5 U.S.C. § 704).[4]

Accordingly, we AFFIRM the district court's judgment dismissing Lopez's claims for lack of subject matter jurisdiction.

---

Here, Lopez is not pursuing a petition for review. Therefore, any discussion related to *Omolo* is premature.

[4] The parties also dispute whether Lopez was "in custody," as required for habeas corpus relief. *See Zolicoffer v. U.S. Dep't of Justice*, 315 F.3d 538, 540 (5th Cir. 2003) (per curiam). As Lopez cannot currently invoke habeas corpus relief, we do not reach that issue.