ORLANDO L. GARCIA, CHIEF U.S. DISTRICT JUDGE
Before the Court is the 28 U.S.C. § 2241 Habeas Corpus Petition filed by Karen Jamileth Hidalgo-Mejia ("Petitioner") (ECF No. 1), and Petitioner's Emergency Motion for Injunctive Relief (ECF No. 2). Respondents have filed their response, along with attachments, under seal. (ECF No. 12). Upon consideration, Petitioner's § 2241 Petition (ECF No. 1) is DISMISSED and Petitioner's Emergency Motion for Injunctive Relief (ECF No. 2) is DENIED .
I. Factual and Procedural Background
Petitioner is a twenty-year-old citizen of El Salvador who, on or about May 30, 2018, entered the United States accompanied by her mother and three minor siblings. Petitioner's siblings were released into the custody of their mother, while Petitioner was detained at the South Texas Detention Facility. Petitioner initially underwent an "Expedited Removal Without Credible Fear" processing and on June 2, 2018, was issued a Determination of Inadmissibility which charged that Petitioner was inadmissible pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (ECF No. 12-1).
According to Petitioner, "[s]ometime thereafter, [she] expressed her fear to return to El Salvador and desire to apply for asylum." (ECF No. 1 at 4). On June 20, 2018, Petitioner received a credible fear interview pursuant to § 1225(b)(1)(B); however, an asylum officer determined Petitioner's fear was not sufficient to qualify for asylum. Petitioner then sought review of this decision and on July 9, 2018, an Immigration Judge ("IJ") affirmed the decision of the asylum officer and ordered that the case be returned to the Department of Homeland Security ("DHS") "for removal of the alien." (ECF No. 12-4).
On July 13, 2018, Petitioner filed a § 2241 Habeas Corpus Petition (ECF No.
*670 1), along with an Emergency Motion for Injunctive Relief (ECF No. 2). Petitioner maintains that, because she is under twenty-one-years of age and unmarried, she qualifies as a child as that term is defined by the INA, 8 U.S.C. § 1101(b)(1)(D)[1] , and has a right to be included in her mother's asylum application, which Petitioner states is currently pending before the Immigration Court in Miami, Florida. (ECF No. 1). Petitioner seeks a stay of the removal proceedings "until she has the chance to be included in her mother's asylum application before the Immigration Court." (ECF 2 at 2).
On July 16, 2018, this Court issued an Order directing that Respondents be served and that Petitioner not be transferred outside of this judicial district pending further orders from the Court. (ECF No. 6). In their response to the Petition, Respondents assert this Court lacks jurisdiction over Petitioner's claims. (ECF No. 12).
II. Discussion
It is well settled that " '[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.' " Gunn v. Minton , 568 U.S. 251, 256, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of Am. , 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ). As such, federal courts are " 'duty-bound to examine the basis of subject matter jurisdiction.' " See Lane v. Halliburton , 529 F.3d 548, 565 (5th Cir. 2008) (quoting Union Planters Bank Nat. Ass'n v. Salih , 369 F.3d 457, 460 (5th Cir. 2004) ). Accordingly, the Court considers whether it has jurisdiction over Petitioner's claims.
1. The REAL ID Act
Petitioner, who has the burden of establishing federal jurisdiction, maintains jurisdiction exists pursuant to 28 U.S.C. §§ 2241 et seq. , Art. I § 9, cl. 2 of the United States Constitution (Suspension Clause), and 28 U.S.C. § 1331 (federal question jurisdiction), in combination with the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq. (ECF No. 1 at 3). However, in May 2005, Congress passed the REAL ID Act, which "divested federal [district] courts of jurisdiction over § 2241 [habeas] petitions attacking removal orders." Rosales v. Bureau of Immigration & Customs Enf't , 426 F.3d 733, 736 (5th Cir. 2005). Pursuant to the Act, "a petition for review filed with an appropriate court of appeals ... shall be the sole and exclusive means of judicial review of an order of removal entered or issued under any provision of [Chapter 12]." 8 U.S.C.A. § 1252(a)(5). Section 1252(e)(1) further limits review of an expedited removal order, providing that no court may enter "declaratory, injunctive, or other equitable relief" pertaining to an expedited removal order except as "specifically authorized in a subsequent paragraph of this subsection." Section 1252(e) also provides that:
Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of-(A) whether the petitioner is an alien, (B) whether the petitioner was ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted *671 for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title[.]
Id. § 1252(e)(2).
Additionally, § 1252(e)(5) states that in determining whether the petitioner was ordered removed under § 1225(b)(1), "the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually admissible or entitled to any relief from removal." Solis-de Patino v. Pitts , 823 F.Supp.2d 457, 460 (W.D. Tex. 2011) (quoting § 1252(e)(5) ) (rejecting petitioner's argument that because the original expedited order of removal was not appropriately executed and failed to comply with regulations, the court had jurisdiction to consider "whether such an order was in fact issued"); see also Osorio-Martinez v. Attorney Gen. United States of Am. , 893 F.3d 153, 164 (3d Cir. 2018) (citing Castro v. United States Dep't of Homeland Sec. , 835 F.3d 422, 428-30 (3d Cir. 2016), cert. denied sub nom. Castro v. Dep't of Homeland Sec. , --- U.S. ----, 137 S.Ct. 1581, 197 L.Ed.2d 705 (2017) (rejecting Petitioners' argument that the court retained jurisdiction to review whether they had been "ordered removed" based on Petitioners' contention that the removal orders were invalid) ).
In this case, although Petitioner does not expressly state she is challenging the expedited removal order, she nevertheless seeks to set it aside, arguing that because she qualifies as a 'child' pursuant to the INA, 8 U.S.C. § 1101(b)(1)(D), she "has a regulatory, statutory, and due process right to be included in her mother's asylum application." Petitioner asserts, therefore, that Immigration and Customs Enforcement ("ICE") should be enjoined from executing the expedited removal order until she has been afforded an opportunity to be included in her mother's asylum application. (ECF No. 2 at 5).
Notably, Petitioner, who has been represented by counsel throughout these proceedings, does not appear to have apprised either the asylum officer or the IJ that she was seeking an adjustment of status as a child based on her mother's application for asylum. In any event, because 8 U.S.C. § 1252(e)(2) strips this Court of jurisdiction to review or set aside Petitioner's order of expedited removal, this Court lacks jurisdiction to consider Petitioner's claims pursuant to 28 U.S.C. § 2241.
2. Suspension Clause of the United States Constitution
Petitioner also contends this Court has jurisdiction pursuant to the Suspension Clause of the United States Constitution, which provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. To determine whether a jurisdiction-stripping statute such as § 1252(e)(2) violates the Suspension Clause, the Court applies the two-step analysis established by Boumediene v. Bush , 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008). Under this framework, the Court first determines whether a habeas petitioner is prohibited from invoking the Suspension Clause due to some attribute of the petitioner or to the circumstances surrounding her detention or removal. Id. at 739, 128 S.Ct. 2229. Only after confirming that the petitioner is not prohibited from invoking the Suspension Clause does the court then turn to the second step of this inquiry and consider whether the substitute for habeas corpus provided by the jurisdiction-stripping statute is adequate to test the legality of the petitioner's removal. Castro , 835 F.3d 422.
*672 In determining whether or not a petitioner can invoke the protection of the Suspension Clause, the following factors are considered: "(1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ." Id. (quoting Boumediene , 553 U.S. at 766, 128 S.Ct. 2229 ).
In Castro , 835 F.3d 422, the Court applied the Boumediene analysis in determining whether petitioners, natives and citizens of El Salvador, Honduras, and Guatemala, who entered the United States seeking asylum and were ordered removed after receiving negative credible fear determinations, could invoke the Suspension Clause in challenging the Court's lack of jurisdiction to review their expedited orders of removal. Id. at 427-28. The Court found petitioners' Suspension Clause claim failed at step one because "the Supreme Court has unequivocally concluded that 'an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application.' " Id. at 445 (quoting Landon v. Plasencia , 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ). The Court noted that petitioners had been apprehended within hours of entering the United States and as "alien[s] seeking initial admission to the United States," could not "invoke the Constitution, including the Suspension Clause, in an effort to force judicial review beyond what Congress ha[d] already granted them." Id. at 445-46.
In the present case, Petitioner, who has the burden of establishing jurisdiction, makes no attempt to overcome Boumediene's first hurdle. Based on the record before this Court, Petitioner's Suspension Clause claim, much like the petitioners in Castro , fails at step one because Petitioner was detained within days after entering the United States and cannot "invoke the Constitution, including the Suspension Clause, in an effort to force judicial review beyond what Congress has already granted [her]." Id. at 445-46. As Respondents point out, every circuit court, including the Fifth Circuit, has explicitly or implicitly rejected similar Suspension Clause challenges to Sections 1252(e)(2) and (e)(5) - even after Boumediene , 553 U.S. 723, 128 S.Ct. 2229 (2008). See Brumme v. INS , 275 F.3d 443, 448 (5th Cir. 2001) (characterizing argument that courts have jurisdiction under § 1252(e)(2)(B) to determine whether the expedited removal statute "was applicable in the first place" as an attempt to make "an end run around" the "clear" language of § 1252(e)(5) ); Diaz Rodriguez v. U.S. Customs & Border Prot. , No. 6:14-CV-2716, 2014 WL 4675182, at *4 (W.D. La. 2014), vacated sub nom. Diaz-Rodriguez v. Holder , No. 14-31103, 2014 WL 10965184 (5th Cir. 2014) ("[T]he legislatively imposed limitation on review of his expedited removal order in his particular case does not run afoul of the Suspension Clause.").
Because Petitioner has not overcome Boumediene's first hurdle, the Court need not address whether the substitute for habeas is adequate and effective to test the legality of Petitioner's removal. According, this Court lacks jurisdiction to consider Petitioner's claims pursuant to the Suspension Clause.
3. The Administrative Procedures Act
Finally, Petitioner contends this Court has jurisdiction pursuant to the APA to review and set aside ICE's expedited removal order, arguing that if ICE executes this order and removes her from the United States, her regulatory, statutory, *673 and due process rights will be violated because she was not afforded the opportunity to be included in her mother's application for asylum. The APA generally provides judicial review for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." Hinojosa v. Horn , 896 F.3d 305, 310 (5th Cir. 2018) (quoting 5 U.S.C. § 702 ). However, judicial review under the APA is not available when "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).
Petitioner, who has the burden of establishing jurisdiction, does not identify the agency action she complains of and alleges only that "she has a regulatory and due process right to be included in her mother's asylum application. However, Petitioner does not allege she requested to be included in her mother's asylum application and was precluded from doing so, either before Petitioner chose to proceed individually on an asylum claim or after she did so. As Petitioner does not allege she was harmed because of agency action, presumably she seeks judicial review under the APA based on a claim that she was "adversely affected or aggrieved by agency action." Hinojosa , 896 F.3d at 310. Even so, the only agency action adversely affecting Petitioner is the expedited order of removal.
However, as previously noted, the REAL ID Act divests district courts of jurisdiction over removal orders, specifically providing that:
Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.
8 U.S.C. § 1252(g) (emphasis added). Pursuant to the Act, "the sole and exclusive means for judicial review" of a final order of removal is by filing a petition for review in the proper court of appeals. 8 U.S.C. § 1252(a)(1), (a)(5), (b)(9). Further, because a request for a stay of removal "aris[es] from the decision ... by the Attorney General to ... execute removal orders," a district court lacks jurisdiction to stay an order of removal. Idokogi v. Ashcroft , 66 F. App'x 526 (5th Cir. 2003) (per curiam) (finding that petitioner's request for a stay of deportation was connected "directly and immediately with the Attorney General's decision to commence removal proceedings against him" and "[t]he district court therefore correctly determined that it lacked jurisdiction to stay the order of removal."); Fabuluje v. Immigration & Naturalization Agency , 244 F.3d 133 (5th Cir. 2000) (per curiam) ("[T]he district court correctly determined that it was without jurisdiction to consider Fabuluje's request for a stay of the removal proceedings.").
As § 1252(e)(2) strips this Court of jurisdiction to review or set aside Petitioner's order of expedited removal, judicial review under the APA is not available. 5 U.S.C. § 701(a) ; see Sandoval-Lopez v. Tillerson , 713 F. App'x 255, 258-59 (5th Cir. 2017). Accordingly, this Court also lacks jurisdiction to consider Petitioner's claims pursuant to the APA.
III. Conclusion
For the foregoing reasons, the Court concludes it lacks jurisdiction over Petitioner's *674 claims and therefore, enters the following Orders:
IT IS ORDERED that this Court's Order prohibiting Respondents from removing Petitioner outside this judicial district (ECF No. 6) is RESCINDED and Petitioner's § 2241 Petition (ECF No. 1) is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.
IT IS FURTHER ORDERED that all other pending motions, including Petitioner's Emergency Motion for Injunctive Relief (ECF No. 2), are DENIED AS MOOT .
IT IS FINALLY ORDERED that this case be CLOSED .

See 8 U.S.C. § 1101(b)(1)(D) (defining "child", for purposes of subchapters I and II, as "an unmarried person under twenty-one years of age who is ... a child born out of wedlock, by, through whom, or on whose behalf a status, privilege, or benefit is sought by virtue of the relationship of the child to its natural mother.").